General Brass & Machine Works, Inc. v. Commissioner.
General Brass & Mach. Works v. Commissioner
Docket No. 4967.
United States Tax Court
1945 Tax Ct. Memo LEXIS 60; 4 T.C.M. (CCH) 949; T.C.M. (RIA) 45308; October 12, 1945
Herbert C. Smyth, Jr., Esq., for the petitioner. Francis X. Gallagher, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax, excess profits tax, and declared value excess profits tax for fiscal years and in amounts, in which deficiencies were determined, as follows: Declared
Value Excess
Excess
Year Ending
Income Tax
Profits Tax
Profits Tax
January 31, 1941
$ 54.52
$ 36.84
January 31, 1942
3,721.56
3,696.12
$8,087.03 Also a penalty of $2,021.76 for the fiscal year ending January 31, 1942, was added by the Commissioner. The issues are whether there was error in the disallowance of $604.10 expense deducted in the first year, and in disallowance of deduction of $211.13 net operating loss, *61 $4,789.75 expenses, and $23,000 officers' salaries, as to the second year; also, as to that year, in the imposition of a 25 per cent delinquency penalty for failure to file an excess-profits tax return. We will dispose of these questions in the order above stated. 1. Though assigned as error in the amended petition, the matter of $604.10 expense in the fiscal year ending January 31, 1941, was not further presented. No evidence was offered, thereon, as petitioner specifically states on brief. Therefore, the disallowance of that amount will be reflected in decision to be entered under Rule 50. 2. Likewise, the matter of $211.13 net operating loss deduction for the year ending January 31, 1942, was not presented, except in the amended petition. Respondent on brief asserts that the disallowance of deduction of the above item of $604.10 for the earlier year resulted in a profit, so that there is no proof of net operating loss carry-over to the following year. This statement the petitioner does not refute and it is borne out by the computation attached to the deficiency notice; and the decision under Rule 50 will reflect the denial of such net operating loss carry-over. 3. The respondent, *62 as to the fiscal year ending January 31, 1942, denied deduction of expenses totaling $4,789.75. The burden is upon the petitioner to show error in such disallowance. The petitioner on brief asserts proof of $4,470.30 for sales, entertainment, and travel expense. At trial proof was made as to a list of expenses totaling $4,328.30, taken from the petitioner's check stubs, and it was testified that the amounts were spent. Among the items so indicated appears one dated December 12, 1941, for $1,000 for "Cash - Christmas expenses - liquor - gifts, Xmas party." This, the testimony shows, was "a Christmas party which we had." Clearly the evidence does not, as to such $1,000, sustain the petitioner's burden and prove that the amount was spent for ordinary and necessary busines expenses of the petitioner corporation. Another stub of $1,000 dated December 30, 1941, is labelled "Cashsales expenses." This amount was paid to Leon Marantz, one of petitioner's officers who was in general in charge of sales, and he testified that he did quite a bit of travelling and it was for his expense over a period of three months in travelling and taking people out to dinner. He had an understanding that he was *63 to be reimbursed for expenses, but was not required to keep detailed records. He also stated that he had a safe deposit box, and that the $1,000 may have been, and ordinarily would be deposited, but that he did not know. The remainder of the list of check stubs totalling $4,328.30 consists largely of various items of sales expense, railroad fare, transportation, in items from $13.55 to $325. Considering all of the evidence on this point, including the interest of the witness, the possible duplication of other items, the amounts involved, and the fact that the two $1,000 items close the list, at the end of the year, and the lack of record on the subject, we are not convinced that the two $1,000 items were improperly disallowed, or petitioner's burden met, to that extent. The remainder of the $4,328.30 is allowed as expense of business. 4. We come now to the principal issue presented: the reasonableness of salaries deducted as paid to petitioner's officers. Ruben Marantz, president, received in the first year $3,500, in the second, $13,500; Leon A. Marantz, secretary-treasurer and in general in charge of the business, received $2,000 the first year, $12,000 the second; Samuel J. Marantz, *64 vice president, received nothing the first year, $7,500 the second. Only the salaries for the second year are in issue. Are they, under section 23(a) of the Internal Revenue Code, to be allowed as deductions as "a reasonable allowance for salaries or other compensation for personal services actually rendered?" The Commissioner allowed deduction of $4,500 to Ruben Marantz, $3,500 to Leon Marantz, and $2,000 to Samuel Marantz, and disallowed the deduction of the balance claimed, $23,000. [The Facts] The petitioner, a corporation, was organized under the law of New Jersey in February 1940. [Its income and declared value excess profits tax returns for the years herein involved were filed with the Collector for the Fifth Collection District of New Jersey. It filed no excess profits tax return for the year ending January 31, 1942.] Its officers in the period here involved were as above stated, and they constituted the directors. The gross business done was approximately: in 1940, $12,000; in the year ending January 31, 1942, $65,000; and in 1942, $221,000. These amounts represent, in substance, payment for labor and services, for the business was that of *65 production machining, tool and die work involving precision instruments and high tolerances. It was what was known as a "headache shop," doing work not readily done by other precision machine shops. It "broke bottlenecks" (proof of the accuracy of the appellation "head-ache shop"). The amount of material involved was not of great importance. The depreciated fixed assets of petitioner on January 31, 1941, were $8,360; and on January 31, 1942, were $13,010.03. Invested capital on January 31, 1941, was $8,885.78, and on January 31, 1942, was $12,386.77. Ruben Marantz was a designer of tools and machines and a tool and die maker of many years' experience, with a high reputation in that respect. Early in 1940 he had a small shop in Newark, New Jersey. His son, Leon Marantz, had first worked in his father's machine shop at about the age of twelve years, learned the trade, and was assistant production manager for Great Eastern Brass Works in 1930. That company manufactured screw machine work. After graduating from college in 1936, he practiced law until 1939, continuing, however, to work to some extent in his father's shop nearby. Samuel Marantz, another son of Ruben Marantz, had also *66 had training in machinery and tooling, though he was a violinist and taught music. In 1939 the father and the two sons discussed formation of the Company, which was later formed. It was decided to go into the production end of machining. The father did not have much equipment. More production machines were secured and others rebuilt to greater accuracy. The parties realized that during 1940 there would not be much opportunity to do much business, and that it would be "tough going" at first; and it was agreed that Ruben would draw $3,500, Leon $2,000, and Samuel, who had a partial income from violin teaching and lived at home, would draw nothing. He was best able not to draw a salary during that year. This agreement was carried out. The prevailing wage rate for tool designers in 1940 was $100 a week for a 40 hour week. Leon did tool designing, was sales representative and general manager, and did the office work. He brought in some business. Ruben and Leon worked overtime, including work on Sundays and holidays, during 1940. Samuel put in less time during that year. During 1941 Ruben and Leon worked about 70 hours a week. Samuel was a tool maker, a supervisor, and in charge of inspection; *67 also a designer of parts not intricate. He was not an expert machine designer. Tool and die makers were paid an average of $1.75 per hour, supervisors more. Samuel worked over 60 hours a week. Leon Marantz was offered $10,000 a year, in 1939, as a production manager, by Great Eastern Brass Works, a comparable business, but declined, to go into business with his father. On April 15, 1941, the three men, in a meeting at a board of directors of petitioner, resolved to pay salaries "for the fiscal year 1941 ending January 31, 1942," as follows: Ruben Marantz, president, $13,500; Samuel J. Marantz, vice president, $7,500; Leon A. Marantz, secretary and treasurer, $12,000. The capital stock in petitioner was held, in 1941, as follows: 98 shares by Ruben, and one share each by Leon and Samuel. From the record before us, we have come to the conclusion, and we hold, that the salaries deducted by the petitioner for the year ending January 31, 1942, were properly deductible as reasonable within the intendment of section 23(a) of the Internal Revenue Code. The record before us demonstrates that the officers whose salaries are involved, were responsible for the successful *68 building up and operation of the petitioner's business, and had done so under voluntary acceptance of insufficient compensation in the past. The ability of the men, in a highly technical line, is clear. (We make no finding as to an offer to Leon Marantz to become manager of a cleaning and dyeing business, considering it not comparable to that conducted by petitioner.) Considering the time worked, and the prevailing rates for such work, and the whole history of the company and the officers involved, we think the Commissioner was not justified in reducing the compensation deducted, and we hold that the salaries deducted for the taxable year were reasonable. 5. There remains the question of 25 per cent penalty for failure to file excess profits tax return for the year ending January 31, 1942. The petitioner argues that such failure was due to reasonable cause and that the records of the business and calculation of tax counsel indicate no such return is required; but no proof whatever of reasonable cause was adduced. Even belief that a return was not necessary, and advice on the point, were not proven. Mere belief that no return was necessary is insufficient. Burford Oil Co., 4 T.C. 613; *69 West Side Tennis Club, 111 Fed. (2d) 6, certiorari denied, 311 U.S. 674; The Economy Savings and Loan Company, 5 T.C. 543 (No. 62, promulgated August 1, 1945) [Dec. 14,696]; O'Sullivan Rubber Co. v. Commissioner, 120 Fed. (2d) 845. The penalty is properly applicable to any excess profits tax of the petitioner for the year ending January 31, 1942. Decision will be entered under Rule 50